IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KONSTANTIN JACÉ,<br><br>        Plaintiff,<br><br>v.<br><br><br><br>ANCHIANO THERAPEUTICS LTD., NEIL COHEN, RUTH ALON, ISAAC KOHLBERG, and STANISLAV POLOVETS,<br><br><br><br><br><br>        Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Konstantin Jacé ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Anchiano Therapeutics Ltd. ("Anchiano" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Anchiano and the Defendants.

## SUMMARY OF THE ACTION

1.  This is an action brought by Plaintiff against Anchiano and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger of the Company with Chemomab Ltd. ("Chemomab") (the "Proposed Transaction").

2.  On December 14, 2020, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Chemomab. Pursuant to the terms of the Merger Agreement, CMB Acquisition Ltd. ("Merger Sub"), an Israeli limited company and wholly-owned subsidiary of Anchiano, will merge with and into Chemomab, with Chemomab surviving as a wholly-owned subsidiary of Anchiano (the "Merger"). Ordinary shares, represented by Anchiano American Depositary Shares ("ADS") will be issued to the Chemomab securityholders at the effective time of the Merger. Following the Merger, Chemomab's securityholders are expected to own approximately 90% of Anchiano's share capital on a fully diluted basis.

3.  In addition to the above, each shareholder of Chemomab will be issued a Chemomab Warrant, which may be exercisable for Anchiano ordinary shares to be represented by ADSs in certain circumstances, pro rata based on the Chemomab shareholders' respective holdings of Chemomab's share capital immediately prior to the closing of the Merger.

4.  On January 13, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading registration statement with the SEC on Form S-4 (the "Registration Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

5. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Anchiano and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Anchiano shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

7. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, the owner of Anchiano shares.

10.     Defendant Anchiano is a limited liability company established under the laws of the State of Israel and has its principal executive offices located at One Kendall Square, Building 1400E, Suite 14-105, Cambridge, Massachusetts 02139.  The Company's stock trades on the NASDAQ under the symbol "ANCN."

11.     Defendant Neil Cohen ("Cohen") is and has been the Chief Executive Officer and a director of Anchiano at all times during the relevant time period.

12.     Defendant Stanislav Polovets ("Polovets") is and has been a director of Anchiano at all times during the relevant time period.

13.     Defendant Ruth Alon ("Alon") is and has been a director of Anchiano at all times during the relevant time period.

14.     Defendant Isaac Kohlberg ("Kohlberg") is and has been a director of Anchiano at all times during the relevant time period.

15.     Defendants Cohen Polovets, Alon, and Kohlberg are collectively referred to herein as the "Individual Defendants."

16.     The Individual Defendants, along with Defendant Anchiano, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

17.     Anchiano is a preclinical biotechnology company committed to discovering and developing new cancer therapies designed to target the products of mutated genes that are drivers of human malignancies. These therapies are called small molecule targeted therapies. Anchiano has obtained the option to license small molecule technologies that it believes it can develop into

product candidates that can deliver novel treatments for cancer patients whose cancers are caused by mutated genes and for whom existing therapies are limited in effectiveness.

## The Company Announces the Proposed Transaction

18. On December 15, 2020, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

> CAMBRIDGE, Mass. and TEL-AVIV, Israel, December 15, 2020 (GLOBE NEWSWIRE) – Anchiano Therapeutics Ltd. ("Anchiano") (Nasdaq: ANCN), a preclinical biopharmaceutical company, and Chemomab Ltd. ("Chemomab"), a clinical-stage biotech company focusing on the discovery and development of innovative therapeutics for fibrosis-related diseases with high unmet need, announce their entry into a definitive merger agreement pursuant to which the shareholders of Chemomab would become the majority holders of the combined company. The proposed merger will create a public company focused on advancing Chemomab's lead product, CM-101. Shareholders of both companies holding shares sufficient to approve the merger have entered into shareholder support agreements with the respective companies in support of the transaction.
>
> Concurrent with the merger, Chemomab seeks to complete a PIPE financing to advance CM-101 into Phase 2 clinical trials in rare fibrotic indications, as well as to further develop Chemomab's earlier-stage pipeline. Initial efforts will focus on orphan indications including primary sclerosing cholangitis (PSC) and systemic sclerosis (SSc), which are inflammatory-fibrotic diseases affecting multiple organs such as the liver (in PSC) and skin and lungs (in SSc). Both indications have a significant unmet need, with patients suffering from debilitating symptoms and no FDA-approved disease modifying treatment options. The combined company also expects to advance CM-101 into a Phase 2a trial to evaluate the antibody's anti-fibrotic effect in patients diagnosed with non-alcoholic steatohepatitis (NASH).
>
> Stan Polovets, chairman of the board of Anchiano, stated, "Following a comprehensive review of strategic alternatives, Anchiano's board of directors has concluded that the proposed transaction with Chemomab is in the best interest of our shareholders. Chemomab's CM-101 has demonstrated positive clinical results, with a novel mechanism of action that has potential to become an important option for patients with debilitating fibrotic diseases. We intend to hold a special meeting of Anchiano's shareholders in the first quarter of 2021 to vote on this merger."
>
> Dr. Adi Mor, co-founder and chief executive officer of Chemomab, added, "Our lead compound, CM-101, has shown very positive safety and anti-fibrotic biomarker activity in a Phase 1b study, and with the antibody advancing into

Phase 2 trials in two orphan fibrotic indications, we believe it is the right time in our lifecycle to move into the public equity markets. We are excited about the next chapter of growth for Chemomab, and the ability to bring the important effects of CM-101 through clinical development and to patients."

Stephen Squinto, Ph.D., chairman of Chemomab and executive partner at OrbiMed, Chemomab's leading investor, commented, "There is an urgent need for treatments that address fibrotic diseases such as PSC and SSc, and the promising early data for CM-101 suggest that this compound has potential to become a meaningful therapeutic option for patients suffering from these conditions. I am pleased with the progress that the Chemomab team has made so far, and we look forward to a productive year in 2021 with significant anticipated advancement of our clinical programs."

Upon closing of the transaction, the combined company will assume the name "Chemomab Therapeutics Ltd." and will be led by Chemomab's management team, headed by its co-founder and chief executive officer, Adi Mor, Ph.D. Neil Cohen, chief executive officer of Anchiano, will join the board of Chemomab at closing.

**Summary of the Transaction**

Current Chemomab shareholders and holders of Chemomab equity awards will convert 100% of their existing equity interests into securities of the combined company. On a pro forma basis and based upon the number of Anchiano securities to be issued in the merger, current shareholders of Chemomab will own approximately 90% of the combined company upon closing, prior to the additional PIPE financing transaction. The actual allocation will be subject to adjustment based on Anchiano's cash balance at the time of closing and the amount of the additional PIPE financing consummated at the closing of the merger. Additional information about the transaction will be provided in a Current Report on Form 8-K that will be filed by Anchiano with the Securities and Exchange Commission ("SEC") and will be available at www.sec.gov.

The proposed transaction has been approved by the boards of directors of both companies. The merger is subject to the approval of Anchiano's shareholders at a special meeting of shareholders, which is expected to occur in the first quarter of 2021, along with the satisfaction or waiver of other customary conditions.

This communication does not constitute an offer to sell, or the solicitation of an offer to buy any securities.

Oppenheimer & Co., Inc. is acting as financial advisor to Anchiano for the transaction and Goldfarb Seligman and Cooley LLP are serving as legal counsel to Anchiano. Ronen Bezalel and Shachar Hadar of Meitar, and Greenberg

Traurig LLP, are serving as legal counsel to Chemomab, and Oppenheimer & Co., Inc. is acting as placement agent for the PIPE financing.

## FALSE AND MISLEADING STATEMENTS
## AND/OR MATERIAL OMISSIONS IN THE REGISTRATION STATEMENT

19. On January 13, 2021, the Company authorized the filing of the Registration Statement with the SEC. The Registration Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

20. Defendants were obligated to carefully review the Registration Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material
### Misrepresentations or Omissions Regarding the Company's Financial Projections

21. The Registration Statement notes that the Company's management prepared financial that were provided to Oppenheimer & Co., Inc. ("Oppenheimer") in connection with its financial analyses.

22. However, the Registration Statement omits the management prepared projections in their entirety.

23. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction. Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

## Material False and Misleading Statements or Material
## Misrepresentations or Omissions Regarding Oppenheimer's Financial Opinion

24. The Registration Statement contains the financial analyses and opinion of Oppenheimer concerning the Proposed Transaction, but fails to provide material information concerning such.

25. With respect to Oppenheimer's *Selected Public Companies Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed in Oppenheimer's analyses.

26. With respect to Oppenheimer's *Selected Transactions Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for the transactions observed in Oppenheimer's analyses.

27. With respect to Oppenheimer's *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the standalone after-tax free cash flows used in the analysis and all underlying line items; (ii) the terminal values used by Oppenheimer for its analysis; (iii) the inputs and assumptions underlying Oppenheimer's selection of the discount rates used in the analysis; and (iv) the inputs and assumptions underlying Oppenheimer's selection of the perpetuity growth rates used in the analysis.

28. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

29. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Potential Conflicts of Interest

30. The Registration Statement fails to disclose material information concerning potential conflicts of interest in connection with the Proposed Transaction.

31. First, the Registration Statement fails to disclose the amount of compensation Defendant Cohen will receive in connection with the Proposed Transaction.

32. Next, the Registration Statement fails to disclose the amount of compensation Oppenheimer stands to receive as a result of its service as Chemomab's private placement agent.

33. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

### COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

34. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the

Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

36. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

37. Defendants have issued the Registration Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

38. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

39. The Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not

misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

40.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

41.     The Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

42.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

43.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

44. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45. The Individual Defendants acted as controlling persons of Anchiano within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Anchiano, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

46. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

48. In addition, as set forth in the Registration Statement sets forth at length and

described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

51. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 8, 2021

Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
1190 Broadway
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*